**KOLLER LAW LLC**
David M. Koller, Esq. (Pa 90119)
Jordan D. Santo, Esq. (Pa 320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **SADIE STELLFOX,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **THE TRUSTEES OF THE** | : | |
| **UNIVERSITY OF PENNSYLVANIA** | : | |
| **d/b/a PENN MEDICINE,** | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Sadie Stellfox (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against The Trustees of the University of Pennsylvania d/b/a Penn Medicine (hereinafter "Defendant"), for violations of the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Malvern, PA.
3. Upon information and belief, Defendant The Trustees of the University of Pennsylvania d/b/a Penn Medicine is a major multi-hospital health system with a location at 440 E Marshall Street, Suite 201, West Chester, PA 19380 and corporate headquarters located at

3400 Spruce Street, Philadelphia, PA 19104.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe

Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## MATERIAL FACTS

## PLAINTIFF'S EMPLOYMENT HISTORY

12. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

13. In or around November 2022, Defendant hired Plaintiff in the position of Patient Service Coordinator ("PSC").

14. Plaintiff was well qualified for her position and performed well.

## PLAINTIFF APPLIED AND WAS APPROVED FOR INTERMITTENT FMLA LEAVE

15. In or around January 2024, Plaintiff applied for Intermittent Family and Medical Leave Act ("FMLA") leave in order to provide care for her minor son who has the serious health condition of autism.

16. On February 8, 2024, Defendant approved Plaintiff's request for Intermittent FMLA leave from February 7, 2024 through August 6, 2024.

17. In or around August 2024, Plaintiff renewed her Intermittent FMLA leave to provide her son with care.

## PLAINTIFF APPLIED AND WAS TRANSFERRED TO THE REMOTE ACCESS SERVICE ASSOCIATE POSITION

18. In or around early 2025, Plaintiff applied for remote positions with Defendant, due to her supervisor's encouragement, and for purposes of career growth.

19. In or around March 2025, Plaintiff transferred into the remote Access Service Associate ("ASA") position.

**DEFENDANT DID NOT PROVIDE PLAINTIFF WITH THE SYSTEM ACCESS REQUIRED TO CLOCK IN AND CLOCK OUT**

20. However, during her training for the ASA position, Plaintiff did not have the system access necessary to clock in and clock out because she was an internal transfer.

21. Erica Lanciano, Supervisor, Ambulatory Access Center and Plaintiff's supervisor, acknowledged to Plaintiff that this lack of access was a known and common problem affecting internal transfers and represented that it was working to correct the issue.

22. After Plaintiff completed her training in or about March 2025, Lanciano accused her of failing to clock in and clock out, even though Plaintiff had in fact been clocking in and clocking out.

23. In or about March 2025, Plaintiff submitted information technology ("IT") tickets in an effort to have the system access problems resolved.

24. However, Plaintiff's system access problems were not resolved.

**DEFENDANT ISSUED PLAINTIFF A WRITTEN WARNING FOR ALLEGEDLY NOT CLOCKING IN AND CLOCKING OUT**

25. In or about June 2025, Lanciano issued Plaintiff a written disciplinary warning, stating that Human Resources had directed that the warning be issued because Plaintiff allegedly was not clocking in and clocking out.

26. Plaintiff declined to sign the written warning because the alleged timekeeping failures were the result of a known system defect and because she had, in fact, been clocking in and clocking out.

27. The timekeeping problems Plaintiff experienced were caused by Defendant's own IT systems and not by any failure on the part of Plaintiff.

**PLAINTIFF NOTIFIED HER MANAGER THAT SHE INTENDED TO RENEW HER INTERMITTENT FMLA LEAVE IN ORDER TO PROVIDE CARE FOR HER SON**

28. In or about early July 2025, Plaintiff notified Lanciano by email and Microsoft Teams that she would be renewing her Intermittent FMLA leave to continue caring for her son.

29. In response, Lanciano asked no questions about the leave and told Plaintiff that she would be contacted by Defendant's leave department.

30. In early July 2025, Plaintiff submitted her request to renew her Intermittent FMLA leave by email to Penn Medicine Disability Services.

**PLAINTIFF REPORTED HER WORK HEADSET WAS MALFUNCTIONING**

31. On or about July 11, 2025, Plaintiff notified Lanciano through Microsoft Teams that her work headset was malfunctioning and requested IT to come onsite to have it repaired.

32. Lanciano instructed Plaintiff that she would have to wait until July 14, 2025, because no one was available to assist her before that date.

**PLAINTIFF REPORTED TO DEFENDANT TO HAVE HER WORK HEADSET REPAIRED, BUT WAS MARKED AS LATE DUE TO AN IT SYSTEM OUTAGE**

33. On July 14, 2025, Plaintiff came onsite to have her equipment repaired, but she did not have a functioning badge to enter the building and was required to wait outside for approximately forty minutes until someone admitted her.

34. Although Plaintiff arrived on time, Erica Lanciano treated her as though she had arrived late because of the delay caused by the badge access problem, despite knowing that Plaintiff's was not functioning and that the delay was beyond Plaintiff's control.

35. Defendant provided Plaintiff with new equipment, but Plaintiff was unable to set it up when she returned home because her computer was still processing the setup.

36. Plaintiff promptly informed Lanciano through Microsoft Teams of the problem and was instructed to call IT.

37. When Plaintiff called IT, she was told that her login system was completely down and that IT would investigate the issue.

**DEFENDANT TERMINATED PLAINTIFF**

38. On July 15, 2025, just days after Plaintiff notified Lanciano of her intent to renew her Intermittent FMLA leave, Lanciano called Plaintiff to ask about the status of her equipment and system access.

39. Plaintiff explained that Defendant's login system was down and that IT was investigating the issue.

40. Lanciano then terminated Plaintiff's employment, citing Plaintiff's purported failure to complete one additional training.

41. Plaintiff's purported failure to complete an additional training was the direct result of Defendant's own IT system outage, which prevented Plaintiff from accessing the systems necessary to complete that training.

42. Defendant's stated reason for terminating Plaintiff's employment was pretextual.

43. The true reason for Plaintiff's termination was her exercise of, and her stated intent to continue exercising, her rights under the FMLA.

44. The close temporal proximity between Plaintiff's early July 2025 notice of her intent to renew her FMLA leave and her termination on July 15, 2025, supports an inference that Defendant interfered with and terminated Plaintiff in retaliation for exercising her FMLA rights.

**PLAINTIFF APPEALED HER TERMINATION AND WAS INFORMED THAT SHE COULD REAPPLY TO POSITIONS WITHIN DEFENDANT IMMEDIATELY**

45. Plaintiff appealed her termination through Defendant's internal appeal process.

46. Defendant upheld Plaintiff's termination.

47. Although Defendant ordinarily imposes a one-year waiting period before a terminated employee may reapply for positions, Defendant informed Plaintiff that she was permitted and encouraged to apply for any position within Penn Medicine.

48. On August 21, 2025, Alin Jacob, Senior Human Resources Business Partner, confirmed in writing that Plaintiff was encouraged to explore and apply for opportunities within Defendant.

49. Defendant's decision to waive its customary one-year waiting period and to encourage Plaintiff to reapply immediately is inconsistent with Defendant's stated position that Plaintiff was terminated for performance-related reasons.

50. Importantly, Plaintiff would not have been eligible for FMLA leave if she was rehired by Defendant.

51. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – INTERFERENCE**
**FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

52. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

53. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

54. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA leave to care for her son's serious health condition.

55. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

56. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

57. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

58. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of her personal life and loss of enjoyment of the ordinary pleasures of life.

59. Plaintiff demands judgment in her favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

60. Plaintiff further demands judgment in her favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those

sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

**COUNT II – DISCRIMINATION/RETALIATION**
**THE FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

61. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.
62. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.
63. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for her son's serious medical condition.
64. Plaintiff gave Defendant sufficient information to allow it to understand that she needed Intermittent leave for FMLA-qualifying reasons.
65. The discrimination/retaliation occurred in the form of discipline and termination for utilizing her intermittent FMLA leave
66. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendant has discriminated/retaliated against Plaintiff by disciplining and terminating her employment.
67. Defendant's motivation for discriminating/retaliating against Plaintiff was connected causally to Plaintiff's Intermittent FMLA leave.
68. Defendant has acted in bad faith by discriminating/retaliating against Plaintiff in violation of the FMLA.

69. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

70. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

71. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff requests this Honorable Court grant her the relief requested in her Prayer for Relief, *infra.*

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Sadie Stellfox, requests that the Court grant her the following relief against Defendant:

(a) Damages for lost wages in the form of back- and front-pay;

(b) Liquidated damages;

(c) Reasonable attorneys' fees;

(d) Recoverable costs;

(e) Pre and post judgment interest;

(f) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(g) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the FMLA.

(h) Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(i) Awarding extraordinary, equitable, legal, and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: October 23, 2026

**By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*